STATE OF NORTH CAROLINA v. HOWARD JOHN HALL

No. 8112SC484

(Filed 17 November 1981)

**Homicide § 30.3— instruction on involuntary manslaughter proper**

In a prosecution for second degree murder, the court correctly included an instruction on involuntary manslaughter where defendant's evidence tended to show that he intended to discharge his pistol to empty it so that it would not be used by his attackers; however, at the time he decided to empty the pistol, he was surrounded and grabbed and the shots hit decedent rather than the ground. The intentional act of discharging the pistol did not amount to an assault because he neither intentionally pointed the pistol at anyone nor intentionally shot decedent.

APPEAL by defendant from *Clark, Judge.* Judgment entered 15 January 1981, in Superior Court, CUMBERLAND County. Heard in the Court of Appeals 20 October 1981.

Defendant appeals from judgment entered upon conviction of involuntary manslaughter.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Marilyn R. Rich, for the State.*

*Assistant Public Defender, 12th Judicial District, Gregory A. Weeks, for defendant appellant.*

WHICHARD, Judge.

Defendant was indicted and tried on the charge of second degree murder. The sole question presented is whether the trial court erred in submitting a possible verdict of involuntary manslaughter. We hold that it did not.

Generally, the evidence tended to show that the decedent, Tony Dalton, died from gunshot wounds inflicted by defendant during a fight among several people. The state's witnesses, primarily other persons involved in the fight, testified that defendant and the deceased exchanged heated words and a few blows in a parking lot, that defendant then went to his girl friend's car and obtained a pistol, and that defendant fired the pistol at the decedent immediately upon turning from the car. They testified that they became involved in the fight only after

defendant fired at decedent and then merely attempted to take the pistol from defendant.

Defendant and his girl friend testified that decedent and several of his friends (the state's witnesses) attacked and beat defendant in the parking lot, and that defendant ran to the car to obtain the pistol upon breaking free from his attackers. They testified that at least two or three of decedent's friends jumped on defendant and grabbed his arm as soon as he straightened up from the car with the pistol in his hand. They testified that the pistol discharged four times during the ensuing struggle before the attackers wrestled it from defendant. Defendant testified:

> I was halfway in the front window on the drivers' side. I got the gun and pulled out. Everything was happening in one motion. I saw people on the other side of the car about the time that I came out the window and I heard somebody coming over the car. As soon as I came out of the car, I was facing Tony Dalton. I didn't see anybody climbing over the car because my attention was directed at Tony when I came out of the window. As I turned around, Tony was face to face with me. I didn't just shoot him. At that time I was being grabbed from behind. The gun was in my left hand. I was aiming for the ground. I saw that the situation called for that. I had to empty the weapon because I felt at that time, purely out of fear, that the weapon would be taken away from me, which it was, and that it would be turned on me. I felt that they were going to kill me. I did not intend to shoot Tony. When I did shoot, I didn't intend to kill Tony Dalton. About the time that I squeezed the trigger I was grabbed from behind. I was aiming at a lower angle but when I was jerked back, it might have been when he hit me and knocked me back, it was all mass confusion.

Defendant asserts one cannot be guilty of involuntary manslaughter if the evidence unequivocally establishes that the killing resulted from the doing of an intentional act, and because defendant intentionally discharged the pistol he thus could not be convicted of involuntary manslaughter. Defendant relies on *State v. Ray*, 299 N.C. 151, 261 S.E. 2d 789 (1980). We disagree with defendant's interpretation of the law of homicide.

Involuntary manslaughter "is the unintentional killing of a human being without either express or implied malice (1) by some unlawful act not amounting to a felony or naturally dangerous to human life, or (2) by an act or omission constituting culpable negligence." *State v. Wilkerson,* 295 N.C. 559, 579, 247 S.E. 2d 905, 916 (1978). "[T]he crime of involuntary manslaughter involves the commission of an act, *whether intentional or not,* which in itself is not a felony or likely to result in death or great bodily harm." *Ray,* 299 N.C. at 158, 261 S.E. 2d at 794 (emphasis added).

Defendant testified he intended to discharge the pistol to empty it so that it would not be used by his attackers. He testified that he did not intend to shoot at anyone. At the time he decided to empty the pistol, however, he was surrounded by people. His testimony thus raised a jury question whether his act (1) was "likely to result in death or great bodily harm," which would render the killing second degree murder or voluntary manslaughter, (2) was culpable negligence, which would render the killing involuntary manslaughter, or (3) was a proper exercise of the right of self-defense, which would render the killing not unlawful. According to defendant's evidence, the act of discharging the pistol did not amount to an assault because he neither intentionally pointed the pistol at anyone nor intentionally shot decedent. We would usurp the function of the jury were we to declare that under the evidence in this case a reasonable person could not find that defendant's conduct in discharging a pistol while surrounded by people amounted to culpable negligence rather than to conduct naturally dangerous to human life.

The facts of *State v. Ray,* which defendant relies on, can be distinguished from the facts here. In *Ray,* defendant testified that he *intentionally pointed the gun at and intentionally shot at decedent.* 299 N.C. at 154-156, 261 S.E. 2d at 792-793. Ray's testimony, the only evidence before the court as to his conduct, thus indicated that he feloniously assaulted the decedent. Consequently, the court erred in instructing on involuntary manslaughter. *State v. Cason,* 51 N.C. App. 144, 275 S.E. 2d 221 (1981) and *State v. Brooks,* 46 N.C. App. 833, 266 S.E. 2d 3 (1980), are also distinguishable, in that the evidence in those cases, like the evidence in *Ray,* showed that the defendants intentionally pointed a gun at and intentionally shot at the victims.

By contrast, in the case before us, defendant's evidence indicates that he did not intentionally fire the pistol at a person, and that he thus did not commit a felonious assault. The question whether his actions were (1) inherently dangerous, (2) culpably negligent, or (3) excusable, was properly decided by the jury.

No error.

Judges VAUGHN and HILL concur.